IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:21-CV-103-BO

| | | |
|---|---|---|
| ROBERT EARL EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| CITY OF FAYETTEVILLE, a political | ) | |
| subdivision of the State of North Carolina | ) | |
| and PATRICK GUILETTE, | ) | |
| | ) | |
| Defendants. | ) | |

This cause comes before the Court on defendants' motions for summary judgment and joint motion to strike the affidavit and testimony of Ronnie D. Smith. [DE 24]; [DE 30]; [DE 42]. The appropriate responses and replies have been filed, or the time for doing so has expired, and in this posture the motions are ripe for disposition. For the reasons that follow, defendants' motions for summary judgment are granted and their joint motion to strike is denied as moot.

BACKGROUND

Plaintiff commenced this action by filing a complaint in Cumberland County Superior Court. [DE 1]; [DE 9-1]. Defendants removed the action based upon this Court's federal question jurisdiction. *Id.*; [DE 9]. Plaintiff's complaint alleges the following claims for relief arising from his interaction with City of Fayetteville police officers on March 4, 2019: (1) excessive force in making arrest – common law claim for battery, (2) 42 U.S.C. § 1983 excessive force in making lawful arrest (in the alternative), (3) state law malicious prosecution – criminal proceeding, (4) state law false imprisonment, (5) 42 U.S.C. § 1983 false arrest and false imprisonment, (6)

violation of 42 U.S.C. § 1983 by defendant City of Fayetteville for failing to train and acting with deliberate indifference, and (7) intentional or reckless infliction of emotional distress or negligent infliction of emotional distress. [DE 9-1].

Following removal, defendants answered the complaint. [DE 14]; [DE 19]. The case proceeded through a period of discovery, and thereafter defendants filed the instant motions for summary judgment. [DE 24]; [DE 30]. In support of their respective motions and memoranda, defendants filed a joint statement of material facts in accordance with Local Civil Rule 56.1, [DE 25], as well as several exhibits. [DE 26]. Plaintiff filed a single memorandum in opposition to both motions for summary judgment, supported by plaintiff's affidavit and the affidavit of Ronnie D. Smith. [DE 37]–[DE 39]. Plaintiff failed to file an opposing statement of material fact in accordance with Local Civil Rule 56.1(a)(2). Defendants each filed a reply in support of their motions for summary judgment. [DE 44]; [DE 45].

Plaintiff and defendant City of Fayetteville have moved for leave to manually file video footage in support of their respective filings. Those motions [DE 28]; [DE 40] are granted. The Court notes, however, that though plaintiff moved for leave to file body camera footage of defendant Guilette and Officer John Banazzi, the files received by the Clerk include only the body camera footage of defendant Guilette. Finally, defendants have moved to strike the affidavit and testimony of Ronnie D. Smith, which was filed by plaintiff in support of his opposition to the motions for summary judgment. [DE 42]. Defendants argue that Smith's affidavit and testimony as a purported expert is untimely and substantively improper in violation of Fed. R. Civ. P. 26(a). [DE 42]. Plaintiff opposes this motion. [DE 48].

DISCUSSION

I. *Motions for summary judgment.*

2

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" supporting the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

As noted above, plaintiff failed to file a statement responding to the defendants' Local Rule 56.1 statement of material facts. "Each numbered paragraph in the movant's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Local Civil Rule 56.1(a)(2). Accordingly, the following facts are undisputed.

On March 4, 2019, the Fayetteville Police Department responded to a domestic disturbance at approximately 5:00 p.m. at plaintiff's residence at 730 Topeka Drive. [DE 25] ¶ 1. Officer

3

Scullion arrived at the scene and was told by plaintiff's granddaughter, Tateanna Cartrette, that Cartrette had been arguing with her boyfriend, Jared Brown, at the 730 Topeka Drive residence. *Id.* ¶ 2. As Cartrette and Brown both tried to leave the address in their respective cars, their cars collided and Cartrette wanted a police report for insurance purposes. *Id.* Brown had already left the scene when Officer Scullion arrived. *Id.*

While Officer Scullion was competing paperwork at the scene, Brown returned and Officer Scullion attempted to get information from Brown about the incident. *Id.* ¶ 3. Brown and Cartrette began arguing and Officer Scullion called for an additional police presence to be on standby. *Id.* As Brown and Cartrette continued to argue, plaintiff walked out of his house and began striking Brown in the face. *Id.* ¶ 4. Officer Scullion was able to de-escalate the scene and plaintiff returned to his home. *Id.* ¶ 5. Officer Scullion radioed again for additional units to respond to the scene. *Id.* The first police officer to respond was defendant Patrick Guillette. *Id.* ¶ 6.

After Officer Guilette arrived, he and Officer Scullion continued to try to keep Cartrette and Brown separated as they argued, and Officer Scullion told Officer Guilette that plaintiff had assaulted Brown. *Id.* Shortly after, plaintiff again exited his home and came toward Brown and the police officers, yelling at Brown. *Id.* ¶ 7. Plaintiff jumped at Brown and was agitated and aggressive. *Id.*

Officer Guilette instructed plaintiff to step back into his front yard and plaintiff did not comply. *Id.* ¶ 8. Plaintiff continued to yell at Brown and approach him in a hostile manner. *Id.* ¶ 9. Officer Scullion attempted to gain physical control of plaintiff and plaintiff pushed past her, attempting to fight and continuing to yell at Brown. *Id.* ¶¶ 9, 10. Officer Guilette grabbed plaintiff by the arm and began to put plaintiff's arm behind his back. *Id.* ¶ 11. Plaintiff pulled away from Officer Guilette. *Id.* Officer Guilette used a "soft hand take-down technique" to put plaintiff on the

4

ground. *Id.* ¶ 12. Once plaintiff was on the ground, Officer Guilette placed plaintiff in handcuffs. *Id.* Officer Guilette noticed that plaintiff was not responding to verbal questions once he was in handcuffs. *Id.* ¶ 13. Officer Scullion called for EMS and Officer Guilette rolled plaintiff on his side in a recovery position to ensure he was breathing. *Id.* Once it was verified that plaintiff was breathing, Officer Guilette removed the handcuffs, placed plaintiff on his back, and began sternum rubs. *Id.* Plaintiff began responding to questions and was able to provide his name. *Id.* ¶ 14. Plaintiff was assisted to a standing position and stayed standing, leaning on Officer Guilette's patrol vehicle, until EMS arrived. *Id.*

EMS arrived and plaintiff was evaluated and transported to the hospital. A CT scan of plaintiff's head was performed which revealed no abnormalities. Both Brown and Cartrette were detained by police officers and separated for investigation. *Id.* ¶ 16. Brown did not want to press charges against either Cartrette or plaintiff, and Cartrette only wanted a police report for vehicle insurance purposes. *Id.* Later that day, Officer Guilette appeared at a magistrate's office to obtain an arrest warrant for plaintiff for the crime of resist, delay, and obstruct. *Id.* ¶ 17. The magistrate found probable cause to exist and issued the warrant. *Id.* Plaintiff was released from the hospital later that evening, arrested, and transported to the Cumberland County Detention Center. *Id.*

Plaintiff has submitted his own affidavit in support of his opposition to the summary judgment motions. [DE 38]. Plaintiff submits that he and his granddaughter had called the Fayetteville Police for help on March 4, 2019, because her boyfriend had threatened them with a pistol. *Id.* ¶ 1. Plaintiff called the police a second time because the officer who arrived first was a small, female officer who was not really doing anything. *Id.* ¶ 2. After Officer Guilette arrived, plaintiff came out of his home and while walking toward Officer Guilette clearly stated that the

boyfriend had a gun. *Id.* ¶ 8. Plaintiff kept repeating himself, but neither of the officers appeared to understand the threat posed by the boyfriend. *Id.* ¶ 9.

The police officers did not have control of the situation and the boyfriend circled around plaintiff several times. *Id.* 10. Plaintiff was worried that the boyfriend would shoot his granddaughter or him, but Officer Guilette, instead of restraining the boyfriend, purposefully put plaintiff on the ground by taking both of plaintiff's hands behind his back, sweeping plaintiff's legs out from under him, and slamming plaintiff head-first into the street. *Id.* ¶ 13. Plaintiff was knocked unconscious and does not remember much after that. *Id.* ¶ 14. Plaintiff was diagnosed with a concussion, shoulder injury, a brain bleed, and a brain contusion. *Id.* ¶ 16. Plaintiff's charge of resisting a public officer was dismissed on September 9, 2019. *Id.* ¶ 33.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. The video evidence depicting the March 4, 2019, incident reveals the following material facts, many of which are in direct contradiction to plaintiff's affidavit. While Officer Scullion was attempting to investigate Cartrette and Brown's car collision, plaintiff exited his home, told Officer Scullion that Brown had said he had a gun in his trunk, and then advanced forward and punched or struck Brown in the face. Scullion Body-camera No. 2, 6:50-7:30. Plaintiff and Brown continued to struggle on the ground, and Scullion announced that someone would be tased if they did not stop fighting. *Id.* Officer Scullion ordered plaintiff to return to his house, and plaintiff complied. *Id.* 7:25-7:30. Officer Scullion radioed for multiple units to respond while Cartrette and Brown continued to yell at each other in the street. *Id.* 8:05-8:25. Officer Guilette arrived, Officer Scullion informed him that plaintiff had assaulted Brown, and plaintiff then came out of his house and returned to the

6

scene. *Id.* 8:50-9:12. Plaintiff began to lunge at Brown and Officer Guilette attempted to restrain plaintiff by holding plaintiff's arm. *Id.* 9:25-9:40. Officer Guilette then used his hands on plaintiff's chest to hold him back and told plaintiff to return to his yard. Officer Guilette Body-camera, 2:25-2:35.

Though plaintiff had moved away from the middle street where Cartrette and Brown were continuing to yell at each other, he returned to the middle of the street and began aggressively approaching and circling Brown while yelling. Officer Scullion No. 2, 9:36-9:50. Officer Guilette began trying to hold plaintiff's arms behind plaintiff's back while plaintiff pulled away, *id.*, 9:52-9:53, and Officer Guilette took plaintiff to the ground. Officer Guilette Body-camera, 2:48-2:50. During the takedown, both of Officer Guilette's hands can be seen on plaintiff's left arm, near the elbow, and then his forearm appeared to push plaintiff's back toward the ground. *Id.*, 2:49. Plaintiff hit the ground, and Cartrette ran to him screaming. *Id.*, 2:50-2:53. Officer Guilette placed plaintiff in handcuffs. *Id.*, 3:10-4:10.

Once it became clear that plaintiff had lost consciousness, Officer Guilette removed the handcuffs and attempted to wake plaintiff and talk to him. *Id.* 4:10-5:25. After plaintiff regained consciousness and Cartrette assisted him to a standing position, Officer Guilette helped plaintiff walk to his patrol vehicle and instructed him to lean on it and wait for EMS. *Id.* 5:25-7:20. Supervisors arrived on scene and Officer Scullion explained what had happened. Scullion Body camera No. 2, 16:20-19:30. Officer Guilette then explained what happened to plaintiff. *Id.* 19:50-20:20. Supervisors instructed the officers to charge plaintiff with "RDO." *Id.*, 21:00-21:30.[1]

A. *City of Fayetteville's motion for summary judgment.*

---

[1] "RDO" appears to be shorthand for the offense of Resist, Delay, and Obstruct, or violation of N.C. Gen. Stat. § 14-223. *See* [DE 25] ¶ 17.

The City of Fayetteville (the City) seeks summary judgment in its favor on all claims. It first argues, correctly, that the claims against Officer Guilette in his official capacity should be dismissed as duplicative of plaintiff's claims against the City. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"); *Hill v. Robeson Cnty., N.C.*, 733 F. Supp. 2d 676, 682 (E.D.N.C. 2010). Accordingly, the claims against Officer Guilette in his official capacity are dismissed as duplicative of plaintiff's claims against the City.

The City next argues that plaintiff's state common law claims are barred by governmental immunity. Plaintiff has alleged state law claims for battery, malicious prosecution, false imprisonment, and both intentional and negligent infliction of emotional distress against defendants generally or Officer Guilette in his official capacity. To the extent these claims are raised against the City, the Court agrees they are barred by governmental immunity.

Governmental immunity provides a complete defense that "shields a defendant entirely from having to answer for its conduct at all in a civil suit for damages." *Craig ex rel. Craig v. New Hanover Cnty. Bd. Of Educ.*, 363 N.C. 334, 337 (2009). This immunity exists when the government is performing governmental functions, such as providing police services. *Arrington v. Martinez*, 215 N.C. App. 252, 257 (2011); *see also Evans v. Chalmers*, 703 F.3d 636, 655 (4th Cir. 2012) ("North Carolina municipalities enjoy governmental immunity from state common-law tort claims arising out of their performance of governmental, as opposed to proprietary, functions."); *Meyer v. Walls*, 347 N.C. 97, 104 (1997) ("Under the doctrine of governmental immunity, a [municipality] is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity.").

8

In his complaint, plaintiff alleges that the City has waived its immunity through the purchase of insurance. A city in North Carolina may waive its governmental immunity by purchasing insurance, but "only to the extent that the city is indemnified by the insurance contract from tort liability." *Arrington*, 215 N.C. App. at 414-15 (citing N.C. Gen. Stat. § 160A-485(a)).

Here, the City's insurance policy does not provide coverage for claims for which governmental immunity would apply. [DE 26-1]. Specifically, the policy "does not apply to any amount for which the Insured would not be liable under governmental or sovereign immunity, but for the existence of th[e] Policy[.]" *Id.* ¶ 12; *id.* at 10. North Carolina courts have held that where the unambiguous language of the policy states that there is no coverage for a claim for which the covered entity would be protected by governmental or sovereign immunity, such purchase of insurance does not amount to a waiver of governmental immunity. *See Est. of Earley ex rel. Earley v. Haywood Cnty. Dep't of Soc. Servs.*, 204 N.C. App. 338, 342 (2010). Accordingly, the undisputed evidence establishes that the City (and by extension Officer Guilette in his official capacity)[2] is immune from suit for plaintiff's state law claims. Its motion for summary judgment on this ground is granted.

The City next argues it is entitled to summary judgment in its favor on plaintiff's § 1983 claims.[3] The Court agrees with the City's arguments that plaintiff has failed to create a genuine issue of fact as to any § 1983 claim against the City. Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690–94 (1978), a local government can be held liable under

---

[2] *See Childs v. Johnson*, 155 N.C. App. 381, 386 (2002) ("Governmental immunity protects not only the county, but also its officers and employees when they are sued in their official capacities.").

[3] The City also argues in support of summary judgment in Officer Guilette's favor on plaintiff's § 1983 claims based on, among other things, qualified immunity. The Court will consider those arguments when considering Officer Guilette's motion for summary judgment.

9

42 U.S.C. § 1983 for its unconstitutional policies. Liability is limited, however, and is not available against a municipality merely for employing a tortfeasor. *Id.* at 691. Liability under *Monell* results only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . .." *Id.* at 694.

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is 'so persistent and widespread' as to constitute a 'custom or usage with the force of law.'

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotations omitted).

Plaintiff has failed to identify any policy or custom for which the City of Fayetteville could be held liable under *Monell*. Plaintiff contends that his expert, Ronnie D. Smith, has testified that Officer Guilette's actions violated Basic Law Enforcement Training policies and procedures, and that this supports his *Monell* claim against the City. Mr. Smith states that Officer Guilette's use of a "leg sweep" violated North Carolina's Basic Law Enforcement training because the force was well out of proportion to the need to restrain plaintiff, a leg sweep is inherently dangerous, and using a leg sweep would be excessive under most circumstances. [DE 39] ¶¶ 18-22. In essence, Mr. Smith states that Officer Guilette failed to follow his North Carolina Basic Law Enforcement training during his interaction with plaintiff.

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). And, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62

(2011). Here, plaintiff has proffered no evidence of a pattern of similar conduct by any of the City's employees. It is true that, in *Canton*, the Supreme Court "left open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." *Id.* at 63. In other words, "the so-called *Canton* exception," *Estate of Jones v. City of Martinsburg*, 961 F.3d 661, 672 (4th Cir. 2020), would apply where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 at 390. But a finding that "a particular officer" was not satisfactorily trained or that he could have had more or better training is not sufficient to impose liability on the municipality. *Id.* at 390-91.

Even considering Mr. Smith's affidavit, which defendants have moved to strike, plaintiff has failed to create a genuine issue of material fact as to whether the City's failure to train its police officers resulted in deliberate indifference to plaintiff's rights. It appears undisputed that Officer Guilette received extensive training, including Basic Law Enforcement Training. *See* [DE 26-2]. Were Officer Guilette to violate that training, that alone would not be sufficient to hold the City liable. *See Burgess v. Goldstein*, 997 F.3d 541, 562 (4th Cir. 2021) (§ 1983 municipal liability not available under respondeat superior theory). To the extent plaintiff is arguing that the City failed to properly train its police officers, he has not identified any specific training which was not provided, nor has he created a genuine issue of fact as to whether any inadequate training resulted his injury. The City is entitled to summary judgment in its favor on plaintiff's *Monell* claim. The City's motion for summary judgment is granted in full.

B. *Officer Guilette's motion for summary judgment.*

Officer Guilette, in his individual capacity, has moved for summary judgment in his favor on all claims. He argues that he is protected by public official and qualified immunity, that the claims for malicious prosecution, false imprisonment, and false arrest should be dismissed because probable cause existed, and that plaintiff's claims for intentional and negligent infliction of emotional distress should be dismissed because his actions were not extreme or outrageous and probable cause existed.

(1) *Section 1983 claims.*

Plaintiff has alleged two claims against Officer Guilette in his individual capacity under 42 U.S.C. § 1983: excessive force and false arrest or false imprisonment. The Court considers first plaintiff's § 1983 excessive force claim. Law enforcement officers violate an individual's Fourth Amendment rights when they effect a seizure using excessive force. *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006). "*[A]ll* claims that law enforcement officers have used excessive force— deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). This standard is objective, and thus without regard to the officer's subjective intention or motivation. *Schultz*, 455 F.3d at 477.

A court does consider, however, the facts and circumstances confronting the officer, and it must focus its attention on the moment the force was employed. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (citations omitted). Specific factors to be considered are (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) whether the suspect is actively resisting or attempting to flee. *Graham*, 490 U.S. at 396. Additional considerations include "the extent of the plaintiff's injury" and "any effort made by the officer to temper or to limit the amount of force" used. *Kingsley v. Hendrickson*, 576 U.S.

12

389, 397 (2015). Whether the officer's conduct was reasonable is a question of law to be decided after determining "the relevant set of facts and draw[ing] all inferences in favor of the nonmoving party to the extent supportable by the record." *Scott*, 550 U.S. at 381 n.8 (emphasis omitted).

Here, the video evidence in the record supports that plaintiff was agitated and acting aggressively toward Brown, was not following commands of either Officer Guilette or Officer Scullion to back off or calm down, and was resisting Officer Guilette's attempts to restrain him. Officer Guilette was also aware that plaintiff had, just minutes before, exited his house and assaulted Brown. The scene generally was tense, with three adults in the street yelling at each other and making various threats and two police officers attempting to gain control of the situation. Based on the foregoing, the Court discerns no dispute of material fact as to whether Officer Guilette was permitted to use reasonable force to gain control over plaintiff. *See Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002).

The primary dispute between the parties on this issue appears to be what specific force was deployed, and whether it was reasonable under the circumstances. Plaintiff contends that Officer Guilette took both of plaintiff's hands behind his back and swept plaintiff's legs out from under him using his (Officer Guilette's) leg, slamming plaintiff head-first into the street. [DE 38] ¶ 13. First, the video footage depicts both of Officer Guilette's hands on plaintiff's left arm and back during the takedown, contradicting plaintiff's affidavit testimony that Officer Guilette restrained both of plaintiff's arms while sweeping his legs out from under him. Second, despite his affidavit, by failing to respond to defendants' statement of material facts, plaintiff has admitted that Officer Guilette used a "soft hand" takedown technique, not a leg sweep. The Court recognizes, however, that the video evidence does not depict whether Officer Guilette used his leg in putting plaintiff on the ground, and that plaintiff's and Officer Guilette's statements are in conflict.

13

The Court has been presented with no authority which would support that using a leg sweep constitutes per se excessive force or excessive force under these circumstances. To the contrary, use of a leg sweep to gain control of a actively resisting, noncompliant person has been deemed to not constitute excessive force. *See Moore v. Barnes*, 802 F. Supp. 3d 792, 843 (E.D.N.C. 2025) (holding leg sweep did not constitute excessive force and noting that "a takedown maneuver in the face of mild resistance is objectively reasonable."). Here, plaintiff was resisting Officer Guilette's attempts to control him and plaintiff posed an immediate threat to, at a minimum, Brown. While plaintiff has submitted evidence that a hemorrhagic contusion was visible on a brain scan in the days following the incident, [DE 38] at 254, suggesting serious injury, Officer Guilette's use of force was limited to a single takedown maneuver and all force ceased once plaintiff was on the ground. In sum, there is no dispute of material fact as to whether Officer Guilette's use of force was excessive.

In the alternative, Officer Guilette is entitled to summary judgment on this claim on the basis of qualified immunity. Qualified immunity shields government officials from liability for statutory or constitutional violations so long as they can reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court employs a two-step procedure for determining whether qualified immunity applies that "asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"At the summary judgment stage, [a] court draws inferences in the light most favorable to the plaintiff" when considering whether qualified immunity applies *Melgar*, 593 F.3d at 353. This

14

generally means adopting the plaintiff's version of the facts. *Scott*, 550 U.S. at 378. A court "do[es] not make credibility determinations in resolving the first prong of the [qualified immunity] analysis." *Wilson v. Prince George's Cty., Maryland*, 893 F.3d 213, 220 (4th Cir. 2018). As to the second prong, "[a] right can be clearly established by cases of controlling authority in this jurisdiction or by a consensus of persuasive authority from other jurisdictions." *Sharpe v. Winterville Police Dep't*, 59 F.4th 674, 683 (4th Cir. 2023). Moreover, the right must be defined with specificity, "[a]nd the particulars matter." *Id.*

Officer Guilette's use of force occurred on March 4, 2019. As of March 2022, "a reasonable officer . . . would not have known that a leg sweep in the face of resistance violated [the plaintiff's] clearly established rights." *Moore*, 802 F. Supp. 3d at 843; *see also Brewington v. Reynolds*, No. CV 0:19-2903-DCN-PJG, 2022 WL 21747979, at *6 (D.S.C. Jan. 25, 2022), *report and recommendation adopted,* No. 0:21-CV-2903 DCN, 2022 WL 21747978 (D.S.C. Feb. 11, 2022). In his opposition to Officer Guilette's motion, plaintiff relies on, for example, *Johnson v. Rogers*, 944 F.3d 966, 970 (7th Cir. 2019), in which the Seventh Circuit held that "there is no doubt that an unnecessary kick, after a suspect is under control, violates the suspect's clearly established rights[,]" *id.*, to argue that it was clearly established that Officer Guilette's conduct violated the Fourth Amendment. But what occurred in *Johnson* is not what the video footage in this case depicts; rather, the video footage shows plaintiff acting aggressively, lunging at Brown, and actively resisting Officer Guilette's commands and attempts to gain control of plaintiff's arms. Plaintiff also relies on *Montoya v. City of Flandreau*, 669 F.3d 867, 873 (8th Cir. 2012), which concerned a leg sweep maneuver performed on a "suspected misdemeanant who was not threatening anyone, was not actively resisting arrest, and was not attempting to flee." *Id.* While plaintiff was also suspected of a misdemeanor crime, he was actively resisting Officer's Guilette's

15

attempts to control him, refusing to comply with Officer Guilette's commands, and was aggressively advancing toward Brown, whom he had already assaulted just minutes earlier. *Montoya* is thus plainly distinguishable, as are the other cases relied upon by plaintiff.

In sum, even crediting plaintiff's testimony that Officer Guilette used a leg sweep maneuver, no authority has been presented to the Court which would show that it was clearly established in March 2019 that use of a leg sweep under these circumstances violated plaintiff's Fourth Amendment rights. Officer Guilette is entitled to qualified immunity on plaintiff's excessive force claim.

The Court next considers plaintiff's § 1983 false arrest or false imprisonment claim. A false arrest or false imprisonment amounts to an unreasonable seizure in violation of the Fourth Amendment, and thus a plaintiff must be able to show that he was arrested or held without probable cause. *See Brown*, 278 F.3d at 367; *see also Rogers v. Pendleton,* 249 F.3d 279, 294 (4th Cir. 2001); *Byers v. City of Richmond,* 746 F. Supp. 3d 275, 324 n.37 (E.D. Va. 2024). "'Probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998) (citation omitted). Probable cause is evaluated using an objective standard, in consideration of the totality of the circumstances known to the officers at the time. *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017).

North Carolina law makes it a misdemeanor offense to "willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge an official duty[.]" N.C. Gen. Stat. § 14-223(a). Failing to follow an officer's commands or instructions or impeding an officer in carrying out his duties constitutes a violation of the statute. *See, e.g., Craddock v.*

*Beaufort Cnty. Sheriff Dep't*, No. 4:09-CV-92-D, 2011 WL 4460309, at *8 (E.D.N.C. Sept. 26, 2011). Here, probable cause existed to arrest plaintiff for violating N.C. Gen. Stat. § 14-223. As the video depicts, plaintiff repeatedly refused to follow Officer Guilette's instructions to return to his yard and otherwise step back from the tense situation. Plaintiff further continued to aggressively step toward Brown and resisted Officer Guilette's attempts to restrain his arms. The Court determines that there is no genuine issue of material fact as to whether probable cause existed to arrest plaintiff for violating N.C. Gen. Stat. § 14-223.[4]

Additionally, a neutral, detached magistrate subsequently found probable cause existed for plaintiff's arrest. [DE 26-3]. Plaintiff has not challenged the validity of the warrant. The existence of a valid arrest warrant generally defeats a plaintiff's § 1983 false arrest and false imprisonment claim. *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998) ("a public official cannot be charged with false arrest when he arrests a [person] pursuant to a facially valid warrant."); *see also McPhearson v. Anderson*, 874 F. Supp. 2d 573, 580 (E.D. Va. 2012). True, "law enforcement officers are civilly liable in false arrest cases where . . . 'it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'" *Souter v. Irby*, 593 F. Supp. 3d 270, 282 (E.D. Va. 2022) (quoting *Malley*, 475 U.S. at); *see also Thweatt v. Rhodes*, No. 21-1242, 2023 WL 4231724, at *4 (4th Cir. June 28, 2023). But that is not the case here. Plaintiff has proffered no evidence which would tend to show that Officer Guilette lied to, misled, or otherwise pressured the magistrate into issuing the arrest warrant. *Thweatt*, 2023 WL 4231724, at *4. In light of the

---

[4] It is not completely clear from plaintiff's complaint whether he has expressly alleged a § 1983 malicious prosecution claim, but it too would fail based upon a finding that probable cause existed for his arrest. *See Durham v. Horner*, 690 F.3d 183, 188-89 (4th Cir. 2012) (where prosecution supported by probable cause, malicious prosecution claims fails); *Stusalitus v. Ortiz*, No. 25-1186, 2025 WL 3459772, at *1 (4th Cir. Dec. 2, 2025).

video evidence, there is no genuine dispute of fact as to whether a reasonably competent officer would have determined that an arrest warrant for resisting, delaying, or obstructing should issue in this case.

In his opposition, plaintiff argues that he was falsely imprisoned at the scene, *prior* to the issuance of an arrest warrant, and thus defendants cannot rely on the existence of an arrest warrant to shield Officer Guilette from liability. But, as discussed above, the Court has determined there to be no genuine issue of material fact as to whether probable cause existed for plaintiff's arrest prior to the magistrate's arrest warrant. Plaintiff has therefore failed to demonstrate that summary judgment should be denied.

Finally, and in the alternative, Officer Guilette is entitled to qualified immunity on plaintiff's false arrest and false imprisonment claim. Plaintiff has failed to respond to Officer Guilette's argument that he reasonably believed that plaintiff had committed a violation of § 14-223 and the Court has been provided with no case law which would support that Officer Guilette's conduct violated any clearly established rights.

(2) *State law claims*.

Officer Guilette has raised the defense of public officer immunity as to plaintiff's state law claims for battery, malicious prosecution, and false arrest. "Under North Carolina law, plaintiffs may hold public officials who are engaged in the exercise of discretionary, governmental duties personally liable only for 'corrupt or malicious' actions." *Anderson v. Caldwell Cnty. Sheriff's Off.*, 524 F. App'x 854, 862 (4th Cir. 2013) (citations omitted). There is a presumption that public officers act in good faith. *Strickland v. Hedrick*, 194 N.C. App. 1, 10 (2008). This presumption must ultimately be overcome by "competent and substantial evidence." *Id.* (citation omitted); *see also Green v. Howell*, 274 N.C. App. 158, 166 (2020). And "[g]enerally, where an officer

18

defendant is entitled to qualified immunity for a Section 1983 claim, the officer is likewise entitled to public official immunity on derivative state law claims." *Caraway v. City of Pineville*, 639 F. Supp. 3d 560, 585 (W.D.N.C. 2022).

Here, plaintiff's battery claim is derivative of his § 1983 excessive force claim. As the Court has determined that Officer Guilette is entitled to summary judgment in his favor on plaintiff's excessive force claim, including that he is entitled to qualified immunity, he is further entitled to public officer immunity on plaintiff's battery claim. *See Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994) (claim for battery "subsumed within the federal excessive force claim"); *Dunlap-Banks v. City of Fayetteville*, No. 5:22-CV-425-FL, 2024 WL 4941306, at *9 (E.D.N.C. Dec. 2, 2024). The same is true for plaintiff's state law false arrest claim. *Rowland*, 41 F.3d at 174; *see also Williams v. City of Jacksonville Police Dep't*, 165 N.C. App. 587, 596 (2004) (existence of probable cause "is an absolute bar to a claim for false arrest.").

A claim for malicious prosecution under North Carolina law requires a showing that the defendant initiated a prosecution with malice and without probable cause, and that the prior proceeding terminated in plaintiff's favor. *Best v. Duke Univ.*, 337 N.C. 742, 749 (1994). Plaintiff argues that Officer Guilette's malice can be inferred from the absence of probable cause to arrest plaintiff, and that the conversation between Guilette and his supervisor, Officer Banazzi, supports this determination. First, as noted above, there is no genuine dispute of material fact that probable cause existed for plaintiff's arrest. Second, plaintiff's video evidence submitted does not include video footage of Guilette's conversation with Banazzi, despite being given additional time to file. Third, the video evidence from Officer Scullion's body camera includes a recording of Officer Guilette's discussion with his supervisors about his interaction with plaintiff, and the Court has not been directed to any comment or action in the record which would show that Officer Guilette

19

acted with malice. *See Becker v. Pierce*, 168 N.C. App. 671, 676 (2005) ("Malice in a malicious prosecution claim may be shown by offering evidence that defendant was motivated by personal spite and a desire for revenge or that defendant acted with reckless and wanton disregard for plaintiffs' rights.") (cleaned up, citation omitted). At bottom, plaintiff has failed to proffer evidence which would overcome the presumption that Officer Guilette acted in good faith, nor has the evidence he submitted created a genuine issue of material fact as to whether Officer Guilette acted with malice. Accordingly, plaintiff's state law malicious prosecution claim fails, and Officer Guilette is otherwise entitled to public officer immunity.

Public officer immunity further shields Officer Guilette from liability on plaintiff's intentional infliction of emotional distress claims. *See Dunlap-Banks*, 2024 WL 4941306, at *9 (granting public officer immunity on intentional infliction of emotional distress claim where defendant granted qualified immunity on federal excessive force and false arrest claims). As to plaintiff's negligent infliction of emotional distress claim, "[i]n North Carolina, public officials are generally immune from personal liability for negligence in the performance of their duties unless evidence demonstrates that they acted maliciously, corruptly, or outside the scope of their official authority." *Bishop v. Cnty. Of Macon*, 620 F. App'x 148, 150 (4th Cir. 2015). Officer Guilette has proffered evidence that his actions were within the scope of his official duties and consistent with the rules and directives of the Fayetteville Police Department. [DE 26-5]. Plaintiff has proffered no evidence which would tend to show that Officer Guilette acted corruptly or outside the scope of his authority, and, as discussed above, there is no genuine dispute of material fact as to whether Officer Guilette acted with malice. He is therefore entitled to public officer immunity on plaintiff's negligence claim.

## II. *Motion to strike.*

In light of the foregoing, the Court denies defendants' motion to strike the affidavit and testimony of Ronnie D. Smith [DE 42] as moot.

### CONCLUSION

Accordingly, for the foregoing reasons, the motions for leave to manually file video footage [DE 28]; [DE 40] are GRANTED. Defendants' motions for summary judgment [DE 24]; [DE 30] are GRANTED. Defendants' motion to strike [DE 42] is DENIED without prejudice as MOOT.

The Clerk is DIRECTED to enter judgment in defendants' favor on each of plaintiff's claims and to close the case.

SO ORDERED, this **4** day of June 2026.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

Case 7:21-cv-00103-BO    Document 55    Filed 06/05/26    Page 21 of 21